UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DELBERT CHARLES COBB, | Case No. 3:15-cv-00172-MMD-CSD |
| Petitioner, | ORDER |
| v. | |
| CALVIN JOHNSON, WARDEN, *et al.*, | |
| Respondents. | |

**I.   SUMMARY**

Petitioner Delbert Charles Cobb's 28 U.S.C. § 2254 habeas corpus petition is before this Court on Respondent's motion to dismiss certain grounds as untimely, unexhausted, procedurally barred, or moot.[1] (ECF No. 85.) As further explained below, the Court agrees that some challenged claims are untimely, procedurally barred, or moot, and therefore, grants the motion in part.

**II.   BACKGROUND**

In May 2007, following a ten-day jury trial, Cobb was convicted of first-degree murder with a deadly weapon, attempted murder with a deadly weapon, and conspiracy to commit a crime. (Exhibit 123.)[2] The charges related to four different, gang-related shootings in Las Vegas that occurred when Cobb was 16 years old. (ECF No. 17 at 5-16.) Cobb had previously pleaded guilty to two of the shootings, both of which were non-fatal. This trial involved two charges of first-degree murder—the first stemmed from the November 13, 1999, murder of Juan Lopez, Sr. and attempted murder of his son, Juan

---

[1]Cobb opposed, and Respondents replied. (ECF Nos. 95, 108.)

[2]Cobb's exhibits referenced in this order are found at ECF Nos. 18-28, 30, 80, and 96.

Lopez, Jr. The second charge was for the December 16, 1999, murder of Jorge Contreras. The jury found Cobb guilty of the Lopez murder and not guilty of the Contreras murder. (Exh. 123.)

After a two-day penalty phase, the jury sentenced Cobb to life in prison without the possibility of parole. (Exh. 127.) Judgment of conviction was entered in September 2007. (Exh. 133.) The Nevada Supreme Court affirmed his convictions in July 2010 and affirmed the denial of his state postconviction petition for a writ of habeas corpus in May 2014. (Exhs. 156, 206.)

Cobb dispatched his original federal habeas petition for filing in March 2015. (ECF No. 5.) The Court appointed the Federal Public Defender as counsel for Cobb. (ECF No. 4.) In March 2017, the Court granted Respondents' motion to dismiss in part, concluding that several grounds were unexhausted. (ECF No. 66.) In March 2018, the Court granted Cobb's motion for a stay and abeyance pending the resolution of his state-court litigation. (ECF No. 77.)

Cobb pursued a second state postconviction petition. The state district court found that Cobb's second petition was procedurally barred because it was untimely and successive. (Exh. 208.) In March 2021, the Nevada Court of Appeals affirmed. (*Id*.) The Court granted Cobb's motion to reopen his federal petition in July 2021. (ECF No. 82.)

### III.   DISCUSSION

#### A.   Timeliness & Relation Back

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). Here, the parties do not dispute that the limitations period expired on June 9, 2015. (ECF No. 95 at 8 n.1; ECF No. 108 at 2.) They also do not dispute that Cobb timely-filed his original *pro se* federal petition on March 17, 2015. (ECF No. 95 at 9 n.5; ECF No. 108 at 2.) A new claim in an amended petition that is filed after the expiration of the AEDPA statute of limitations will be timely only if the new claim relates back to a claim in a timely-

filed pleading under Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading. *Mayle v. Felix*, 545 U.S. 644 (2005).

In *Mayle*, the United States Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because the claims all challenge the same trial, conviction, or sentence. 545 U.S. at 655-64. Rather, under the construction of the rule approved in *Mayle*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. 545 U.S. at 659 & n.5; *see also Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013).

Respondents originally merely argued that the entire petition was subject to dismissal as untimely. (ECF No. 85 at 4-6.) They subsequently clarified their position that the following grounds in the second-amended petition do not relate back to the original, timely-filed petition: 1(a),1(b), 2, 3(b), 4, and 7. (ECF No. 108 at 4-7.)  The Court will address each ground in turn below.

**1.     Ground One**

Cobb asserts that prosecutors unconstitutionally struck two prospective jurors, Ms. Carter and Ms. Dawson, both Black women, and the only Black venire members, with purposeful, discriminatory intent in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). (ECF No. 17 at 19-24.) Respondents argue that Cobb did not name Ms. Carter in his original petition. (ECF No. 108 at 4.) However, both the original and amended petition allege that prosecutors struck the only two Black prospective jurors. In the original

3

petition, Cobb names Ms. Gardener and Ms. Dawson. Cobb most likely got Ms. Carter's name wrong in his *pro se* petition. He also argues in both petitions that his venire underrepresented minorities as compared to the Black populations in Clark County. He specifically argued in both petitions that the State's explanation for striking Ms. Dawson was pretextual. (ECF No. 17 at 22-24.) The Court concludes that the claims regarding the specifics of the State striking Ms. Carter and Ms. Dawson relate back to the original petition and are timely.

However, Respondents also point out that Cobb alleges in the amended petition that a comparative juror analysis demonstrates that the State's explanation for striking Ms. Dawson was pretextual. Cobb specifically compares the striking of the two Black jurors with the questioning of four white prospective jurors whom the State did not move to strike. Cobb did not reference comparative juror analysis in his original petition, but the specific comparison is meant to bolster the claim that the State's reasons for striking the only Black prospective jurors was pretextual. (ECF No. 17 at 19-24.) The entirety of ground one relates back to the original petition and is, therefore, timely.

### 2.  Ground Two

Cobb argues that his trial counsel was ineffective for failing to object when the trial court dismissed the Black prospective jurors before holding a hearing to assess whether the prosecutors dismissed them with discriminatory intent. He also asserts that appellate counsel was ineffective for failing to raise this issue on appeal. (ECF No. 17 at 30-31.) Respondents are correct that Cobb fails to reference a hearing at all in his entire original petition. (ECF No. 108 at 5-6.) Cobb urges that *Nguyen* supports his argument that ground two relates back. *See* 736 F.3d at 1296-1297. The court in *Nguyen* permitted an ineffective assistance of trial counsel claim to relate back to the underlying, substantive claim. The hearing can be fairly viewed as part of the core operative facts of Cobb's *Batson* challenge. Ground two relates back, and therefore, is timely.

///

### 3.    Ground Three

Cobb argues that he was denied his right to have a jury venire selected from a fair cross-section of society in violation of the Fifth, Sixth, and Fourteenth Amendments because his venire was made up of only 5% Black and Hispanic prospective jurors when Clark County's population was roughly 35% Black and Hispanic. (ECF No. 17 at 31-33.) Respondents break the claim up into two parts and argue that the claim that Hispanics were underrepresented is unexhausted. The Court agrees that the claim in the original petition is about the alleged underrepresentation of Black prospective jurors only. Thus, the portion of the claim about alleged underrepresentation of Hispanic prospective jurors does not relate back and is untimely.

### 4.    Ground Four

Cobb insists his trial counsel was ineffective for failing to object to the trial court's effective denial of his motion to strike the jury venire after an evidentiary hearing was granted but before conducting the hearing in violation of the Fifth, Sixth, and Fourteenth Amendments. He further argues that appellate counsel was ineffective for failing to raise this issue. (ECF No. 17 at 34-35.) As discussed above as to ground two of the amended petition, amended ground four relates back to Cobb's timely-filed Batson claims.

### 5.    Ground Seven

Cobb also argues that he was denied his right to due process in violation of the Fifth, Sixth, and Fourteenth Amendments because the trial court improperly admitted prior bad act evidence. (ECF No. 17 at 42-45.) Specifically, Cobb refers to (1) Angel Melendez's testimony; (2) Angel Melendez's written statement; (3) Detective Nellis' testimony; (4) Detective Morales' testimony; and (5) the parole and probation officer's testimony. Contrary to Respondents' assertions, in his original petition Cobb referenced Melendez's testimony and written statement, detectives who responded to/investigated the incidents, and a parole and probation officer's testimony. (ECF No. 5 at 16-21.) Amended ground seven is timely.

### B. Cobb's Actual Innocence Claim

Cobb next argues that even if any of his claims are untimely, the Court should not dismiss those claims or the petition because he is actually innocent. (ECF No. 95 at 21-36.) He insists that the evidence at trial was weak and that Juan Lopez, Jr., the surviving victim, has testified since the trial that Cobb was not the shooter. He also contends that the ballistics or "toolmark evidence" presented at trial by a ballistics expert to tie the weapon to two prior shootings to which Cobb pleaded guilty was rooted in faulty science. Respondents challenge the credibility of Lopez and also argue that Cobb fails to present any report that specifically undermines or otherwise contradicts the ballistics evidence presented at trial. (ECF No. 108 at 8-10.)

#### 1. Relevant legal standard

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means factual innocence, not mere legal insufficiency. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "[W]here post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise barred claims." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011). However, the Supreme Court has emphasized that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, [an actual-innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S.

at 324. To be "new" for purposes of an actual-innocence claim, the evidence need only be "newly presented," *i.e.*, reliable evidence "that was not presented at trial," as opposed to "newly discovered" and thus previously unavailable. *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). Actual-innocence review incorporates "all evidence," including (i) evidence alleged to have been improperly admitted (but with due regard to its questionable reliability), (ii) evidence tenably claimed to have been wrongfully excluded by the trial court, (iii) evidence the defense did not present to the jury at trial, or (iv) evidence that became available only after the trial. *Id*. (citing *Schlup*, 513 U.S. at 327-28). Newly presented evidence may call into question the credibility of trial witnesses, potentially requiring credibility assessments on federal habeas review. *See Schlup*, 513 U.S. at 330; *see also Stewart v. Cate*, 757 F.3d 929, 941 (9th Cir. 2014). However, a *Schlup* claim attempting to discredit prosecution witnesses provides less support for actual innocence than affirmatively presenting new exculpatory evidence. *See, e.g.*, *Lee*, 653 F.3d at 943-45 (holding that a reasonable juror may have rejected an expert's speculation and, even assuming a police report constituted new evidence, jurors may still have convicted Lee given all they heard at trial); *Sistrunk v. Armenakis*, 292 F.3d 669, 675-76 (9th Cir. 2002) (en banc) (finding that excluded evidence had "some impeachment value" but was "far from conclusive" and thus did not undermine confidence in the conviction).

### 2.   Lopez's trial and state postconviction evidentiary hearing testimony

In the spring of 2007, Juan Lopez, Jr. testified at Cobb's trial. (Exh. 113 at 14-29.) In response to questions from the State, Lopez had said that he did not remember the incident in November 1999, when he was shot, and his father was shot and killed. The court permitted the prosecutor to treat Lopez as an adverse witness and ask him leading questions about a previous deposition and statements Lopez gave to police at the time of the shootings. Lopez claimed that he did not remember telling police that he had been

at a convenience store with his dad when a white Chevy Astro van pulled up and an individual who was Black and white (*i.e.*, mixed race), wearing a Dallas Cowboys hat and blue and white jacket, got out of the passenger seat. The prosecutor asked Lopez if he remembered when the van driver asked him and his father where they were from—meaning their gang affiliation—and that after they answered the passenger then fired numerous shots at the pair. Lopez denied remembering the events.

About five years later, in September 2012, Lopez testified at Cobb's state postconviction evidentiary hearing for his first state habeas petition that on the night in question a white Astro van approached him. (Exh. 185 at 16-25.) Someone exited from the opposite side of the van from the driver's side and began shooting at Lopez. He said he knew who Cobb was before this incident and that Cobb was not the person who shot him. He acknowledged that at Cobb's trial he had testified that he did not see the shooter. He had been shown a photo lineup at the time and did not identify Cobb. Lopez said that law enforcement had told him at the time that they believed that Cobb was the shooter. While Lopez testified at the evidentiary hearing that he was certain at the time of the incident that Cobb was not the shooter, he never told police that and said "I don't know" when asked why he did not. (*Id*. at 17.) Lopez explained that eleven years after the shootings Lopez swore an affidavit that Cobb did not shoot him or his father and testified that he was positive it was not Cobb. Lopez testified that the shooter was Hispanic. His explanation was that he told police at the time that the shooter was a Black male who had been sitting in the passenger seat because it was dark, and he couldn't really see. He was asked if he was lying on the two separate occasions when he told police it was a Black male in the passenger seat of the van, and he responded, "I guess I was." (*Id*. at 19, 20.) Under questioning from the court, Lopez acknowledged that that state postconviction evidentiary hearing, thirteen years after the shooting, was the first time he had told anyone that a Hispanic man was the shooter.

### 3. Nevada Supreme Court's relevant rulings on state postconviction petitions

The trial court found that Lopez's testimony at the evidentiary hearing for Cobb's first state postconviction petition was contradictory and not credible and that it was unlikely that the version of events he testified to at the hearing would have affected the verdict. (Exh. 192 at 11.) The state supreme court rejected Cobb's argument that his trial counsel was ineffective for failing to conduct a pretrial interview of Lopez:

> Appellant has failed to demonstrate deficiency or prejudice. Appellant has not shown that counsel was objectively unreasonable in not interviewing a victim who repeatedly told police that he could not remember details of the shooting and who did not identify appellant in a photographic lineup. At trial, the victim maintained that he could not remember, and at the evidentiary hearing for the instant petition, the victim testified that at the time of trial he felt that the best way to help appellant was to continue to maintain that he could not remember. We therefore conclude that the district court did not err in denying this claim.

(Exh. 206 at 3-4.)

Cobb returned to state court in 2017 to present his argument that he was actually innocent. (ECF No. 77; Exh. 208.) The Nevada Court of Appeals considered Cobb's arguments that he is actually innocent and that failure to consider his claims on the merits would result in a fundamental miscarriage of justice. (Exh. 208.) The court agreed with the state district court that Cobb failed to demonstrate that it was more likely than not that no reasonable juror would have convicted him in light of new evidence:

> Cobb contended a victim stated that Cobb was not the shooter . . . .
>
> The district court set an evidentiary hearing in this matter, but Cobb declined to call witnesses to testify at that hearing. The district court noted that the victim's statements were presented during the proceedings for Cobb's previous postconviction petition and the district court judge in that proceeding found the victims statements to be unbelievable. The district court again reviewed the victim's statements regarding Cobb's involvement and found that reasonable jurors would not view that victim's statements as credible. The district court also reviewed the information Cobb provided regarding the reliability of the firearm tool mark testimony, but found that information was insufficient to undermine confidence in the result of the trial. *See id*. at 966, 363 P.3d at 1154. The district court found that, in

9

> consideration of all the evidence, Cobb did not demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of new evidence.
>
> The record supports the district court's decision, particularly in light of the strong evidence of Cobb's guilt presented at trial. The evidence included Cobb's admission that he was present when the shooting occurred, evidence demonstrating Cobb's efforts to attack persons he believed were members of rival street gangs, and evidence demonstrating the victims were shot with the type of .22 caliber firearm that Cobb had previously admitted using when shooting others. Therefore, we conclude the district court did not err by denying the petition as procedurally barred.

(Exh. 208 at 3-5.) The court affirmed the denial of Cobb's second state postconviction petition as procedurally barred because it was untimely and successive.

### 4.    Cobb fails to demonstrate actual innocence

As to Lopez's changing versions of events, the Court agrees with the state courts that Lopez was not credible. His postconviction testimony that he would never forget the shooter's face flatly contradicted his statements to police close to the time of the shooting and his testimony at trial. Credibility determinations are generally reviewed for clear error. *See Earp v. Davis*, 881 F.3d 1135, 1145 (9th Cir. 2018). When questioned at the postconviction hearing as to why he had not testified at trial that Cobb was not the shooter, Lopez was equivocal and evasive. Cobb has not established clear error. Given Lopez's trial testimony, the Court does not view his postconviction testimony and affidavit to be the sort of trustworthy eyewitness account that would constitute reliable new evidence. Cobb has failed to show that it is more likely than not that no rational juror would have convicted him if Lopez testified at trial as he did at the postconviction hearing.

### 5.    Toolmark evidence presented at trial

Detective James Krylo testified at trial that he was a forensic scientist in the Las Vegas Metropolitan Police Department Forensic Laboratory's firearms unit. (Exh. 115 at 139-162; Exh. 117 at 11-35.) He testified that he had analyzed toolmarks—examining firearms, test-firing them and comparing microscopically the bullets and cartridge cases to evidence bullets and cartridge cases—for about 16 years. Cobb had pleaded guilty to attempted murder for a November 4, 1999, shooting. Krylo stated that he concluded

conclusively that ten of twelve cartridge cases recovered from the scene of the Lopez shooting on November 13 were fired from the same Remington rifle used in the November 4 shooting. (Exh. 117 at 14-15.) He testified that the cartridge cases recovered from the December 16 Contreras shooting were not from the Remington rifle but from a Winchester rifle that had also been recovered. The Winchester rifle was excluded from the November 4 and 13 incidents. (*Id*. at 17-19.)

### 6. Nevada Supreme Court's ruling regarding toolmark evidence

Cobb did not challenge the ballistics evidence on appeal or in his first state postconviction proceedings. As discussed above, the Nevada Court of Appeals affirmed the denial of his second state postconviction petition as procedurally barred because it was untimely and successive. (Exh. 208.) That court considered Cobb's arguments that he is actually innocent and that failure to consider his claims on the merits would result in a fundamental miscarriage of justice. The court noted that Cobb called no witnesses at his second state postconviction evidentiary hearing. The court further observed that the district court had considered the information Cobb provided regarding the reliability of the firearm tool mark testimony but found that information was insufficient to undermine confidence in the result of the trial. (*Id*.)

### 7. Cobb fails to demonstrate actual innocence

Cobb acknowledges that the State's expert testimony was acceptable by scientific standards when it was presented at his 2006 trial. (ECF No. 95 at 29-35.) He asserts that the understanding of the science behind ballistics/toolmark identification has changed. He cites a 2009 National Academy of Sciences report as well as a 2016 report by the President's Council of Advisors on Science and Technology ("PCAST"). The PCAST report concluded that

> [i]f firearms analysis is allowed in court, validity as applied would, from a scientific standpoint, require that the expert: (1) has undergone rigorous proficiency testing on a large number of test problems to evaluate his or her capability and performance, and discloses the results of the proficiency testing; and (2) discloses whether, when performing the examination, he or

        she was aware of any other facts of the case that might influence the conclusion.

(Exh. 216 at 126.) Cobb notes that the State's expert did not testify regarding how many times he had performed this analysis or his proficiency or whether he was aware of any facts that may have influenced his conclusion. (Exh. 115 at 139-162; Exh. 117 at 11-35.) Cobb also points out that that expert acknowledged in a later deposition that firearm toolmark evidence is subjective. (Exh. 219 at 56.)[3] Respondents argue that these reports are advisory at best and do not constitute new, reliable evidence. They note that neither report calls for the elimination of testimony about toolmark evidence. In his deposition, Krylo stated that he was familiar with the two reports, had reviewed them at the time they were issued, and did not personally change any of his methods as a result of the reports. (Exh. 219 at 61-63.) He also stated that throughout his career he had always successfully completed rigorous proficiency testing conducted by outside entities. (*Id*.)

        Cobb analogizes the alleged shift in the understanding of toolmark evidence to shifts in the understanding of shaken baby syndrome ("SBS"). (ECF No. 95 at 33-35.) He cites cases where courts concluded that petitioners were able to demonstrate actual innocence based on the evolution of the scientific understanding of SBS subsequent to the petitioners' convictions. Cobb relies on the unpublished Ninth Circuit Court of Appeals decision in *Hanson v. Baker*, 766 F.App'x 501, 502 (9th Cir. 2019). Hanson had insisted that a short fall from the front porch had caused his 20-month-old step-daughter's fatal head injuries. Medical experts testified at his trial that short falls could not cause such injuries. The appeals court reasoned that later scientific developments and evidence proved that—contrary to the expert medical testimony at Hanson's trial—short falls can cause fatal injuries in children and the child's injuries specifically at issue in that case could be explained by causes other than abuse. (*Id*.) Cobb further relies on an Illinois federal district court case in which the petitioner was convicted of first-degree murder based on SBS, *Del Prete v. Thompson*, 10 F. Supp. 3d 907 (N.D. Ill. 2014). But in both

---

[3]The Court observes that this is the sole reference to Cobb's lawyers' 90-page deposition of Krylo, conducted in February 2019. (Exh. 219.)

of those cases, the petitioners had presented expert testimony and reports that were specific to their cases. *See id*. at 922, 954; *Hanson v. Baker*, Case No. 3:04-cv-00130-MMD-VPC, 2018 WL 10400454, at *14-*20 (D. Nev. Mar. 13, 2018), *aff'd*, 766 F. App'x 501. Here, Cobb called no witnesses at the second state postconviction hearing. The advisory reports on the use of ballistics evidence do not establish factual innocence.

The Court cannot conclude that Cobb has even presented evidence that undercuts the reliability of the proof of guilt, let alone affirmatively proves innocence. *See Lee*, 653 F.3d at 938. Cobb has not demonstrated actual innocence that would allow him to use the *Schlup* gateway to excuse the procedural default of his untimely claims. Thus, the portion of ground three that the Court held untimely, as discussed above, is dismissed as time-barred.

### C.      Exhaustion & Procedural Default

Of the remaining claims, Respondents also argue that grounds two, four, five, seven, 13, and 14 (in part) are unexhausted and/or procedurally defaulted. (ECF No. 108 at 10-11.)[4] Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. *See* 28 U.S.C. § 2254(b). Cobb presented grounds two, four, five, and seven in his second state postconviction proceedings. (Exhs. 208, 221.) The Nevada Court of Appeals affirmed the denial of the second state petition as untimely and successive and therefore procedurally defaulted. The Court cannot review a claim "if the Nevada [appellate court] denied relief on the basis of 'independent and adequate state procedural grounds.'" *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003). In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine. *See* 501 U.S. 722, 731-32 (1991). A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established at the

---

[4]Respondents also argue that the portion of ground three that this Court dismissed as untimely is unexhausted.

time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996). A state procedural bar is "independent" if the state court "explicitly invokes the procedural rule as a separate basis for its decision." *Yang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003). A state court's decision is not "independent" if the application of the state's default rule depends on the consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).

The Nevada Court of Appeals affirmed the trial court's denial of the second habeas petition on the grounds that it was procedurally barred as untimely and successive. (Exh. 208.) *See also* NRS §§ 34.726(1) and 34.810(1)(b)(2). The Ninth Circuit has held that application of the Nevada statutory rules regarding timeliness and successive petitions are independent and adequate state law grounds for procedural default. *See Moran v. McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996); *see also Valerio v. Crawford*, 306 F.3d 742, 778 (9th Cir. 2002); *Vang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003); *Bargas v. Burns*, 179 F.3d 1207, 1210-12 (9th Cir. 1999) (in the last two cited cases the Ninth Circuit held that, at least in non-capital cases, application of the successive petition rule of NRS § 34.810(2) is an independent and adequate state ground for procedural default). The Nevada court's decision in this case did not depend on the application of federal law in deciding that the claim was procedurally defaulted. Accordingly, the state court relied on independent and adequate state law grounds in dismissing petitioner's second state habeas petition as untimely and successive.

Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Id.* at 488. For cause to exist, the external

14

impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). As to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

### 1. Grounds Five and Seven

In ground five, Cobb contends that he was denied his right to a fair trial when the court refused to sever two unrelated murder charges in violation of the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 17 at 36-39.) Cobb asserts in ground seven that the trial court improperly admitted extensive prior bad evidence in violation of his Fifth, Sixth and Fourteenth Amendment rights. (ECF No. 17 at 42-45.) Cobb argues that the procedural default of these claims should be excused because he is actually innocent and also that ineffective assistance of state postconviction counsel can provide cause. (ECF No. 95 at 38-40.)

To the extent Cobb argues cause based on the ineffective assistance of postconviction counsel, the argument is unavailing. First, attorney error cannot provide cause for a procedural default if a petitioner had no constitutional right to counsel in a proceeding in which the default occurred, and there is no constitutional right to counsel in state postconviction proceedings. *See Coleman*, 501 U.S. at 752-54; *Smith v. Baldwin*, 510 F.3d 1127, 1146-47 (9th Cir. 2007). Second, although the Supreme Court created an exception to this rule in *Martinez v. Ryan*, 566 U.S. 1 (2012), the exception is narrow. *Martinez* provides that, in some cases, a petitioner can establish cause for a procedural default if his or her postconviction counsel provided ineffective assistance by failing to raise a substantial claim of ineffective assistance of trial counsel in initial-review collateral proceedings. *See id.* at 16, 17. *Martinez* does not supply cause to excuse the procedural default of a substantive claim of trial court error. *See id.* Grounds five and seven are not

claims of ineffective assistance of trial counsel and are instead claims of substantive trial court error. The ineffective assistance of postconviction counsel therefore cannot supply cause for the default of grounds five and seven. The Court has already concluded that Cobb has not demonstrated actual innocence. Thus, actual innocence is not available to excuse procedural default. Grounds five and seven, therefore, are procedurally barred from federal habeas review.

### 2. Grounds Two and Four

In ground two Cobb argues that his trial counsel was ineffective for failing to object when the trial court dismissed the Black prospective jurors before holding a hearing to assess whether the prosecutors dismissed them with discriminatory intent. He also asserts that appellate counsel was ineffective for failing to raise this issue on appeal. (ECF No. 17, pp. 30-31.) Cobb insists in ground four that his trial counsel was ineffective for failing to object to the trial court's effective denial of his motion to strike the jury venire after the evidentiary hearing was granted but before conducting the hearing in violation of the Fifth, Sixth, and Fourteenth Amendments. He further argues that appellate counsel was ineffective for failing to raise this issue. *Id*. at 34-35.

As with grounds five and seven, Cobb argues that the procedural default of these claims should be excused because he is actually innocent and also that ineffective assistance of state postconviction counsel can provide cause. (ECF No. 95 at 38-40.) Again, actual innocence is not available to excuse the procedural default. But here, as respondents acknowledge, the ineffective assistance of postconviction counsel may supply cause for the default of the ineffective assistance of trial counsel claims in grounds two and four. The court agrees with Respondents that the question of the substantiality is intertwined with the merits of the claims. Accordingly, the Court defers a determination of whether the ineffective assistance of trial counsel claims in grounds two and four are procedurally defaulted to adjudication of the merits of the petition. However, *Martinez* may only establish cause and prejudice as to a defaulted claim of ineffective assistance of trial

counsel; it does not extend to ineffective assistance of appellate counsel. *Davila v. Davis*, 137 S.Ct. 2058, 2065 (2017). Thus, the court dismisses the appellate counsel claims in grounds two and four as procedurally barred from federal review.

### 3. Ground 14

Cobb claims that the cumulative effect of trial errors violated his Fifth, Sixth, and Fourteenth Amendment due process rights. (ECF No. 17 at 57-58.) To the extent that this ground encompasses claims that remain before the Court, it is exhausted and properly before the Court.

### 4. Ground 13

Finally, Cobb argues that his sentence of life without parole—imposed based on his conviction for crimes committed when he was 16 years old—violates his Fifth, Eighth, and Fourteenth Amendment rights to be free from cruel and unusual punishment. (ECF No. 17 at 56-57.) Cobb acknowledges that this ground is unexhausted. (*Id*. at 56.) Moreover, the Nevada legislature enacted NRS § 213.12135 in 2015, which automatically converted Cobb's sentence to life with the possibility of parole after 20 years because he was a juvenile at the time of the crime.[5] Thus, this claim is dismissed as moot.[6]

Thus, as discussed above, Respondents' motion to dismiss is granted in part. Respondents will next answer the remaining grounds for relief: one and three (in part as set forth in this order), six, eight, nine, 10, 11, 12, and 14. Cobb will have an opportunity

---

[5]NRS § 213.12135 provides:

> (1) . . . a prisoner who was sentenced as an adult for an offense that was committed when he or she was less than 18 years of age is eligible for parole as follows: (b) For a prisoner who is serving a period of incarceration for having been convicted of an offense or offenses that resulted in the death of only one victim, after the prisoner has served 20 calendar years of incarceration . . .

[6]The Court also notes that the Nevada Department of Corrections website reflects that Cobb, whose Offender ID is 64849, is currently serving a sentence of life with the possibility of parole after 20 years. *See* https://ofdsearch.doc.nv.gov/form.php (last accessed 8/9/2022).

to reply in support of his petition. The parties may address whether cause and actual prejudice should excuse the procedural default of the ineffective assistance of counsel claims in grounds two and four.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Respondents' motion to dismiss (ECF No. 85) is granted in part as follows and denied in part as follows: (1) the claim in ground three about alleged underrepresentation of Hispanic prospective jurors is dismissed as untimely; the remainder of ground three is timely; (2) ground one is timely; (3) grounds five and seven are dismissed as procedurally barred; (4) the claims of ineffective assistance of appellate counsel in grounds two and four are dismissed as procedurally barred; (5) a decision on whether the ineffective assistance of trial counsel claims in grounds two and four are procedurally barred is deferred as set forth in this order; and (6) ground 13 is dismissed as moot.

It is further ordered that Respondents have 60 days from the date this order is entered within which to file an answer to the remaining grounds in the second-amended petition.

It is further ordered that Petitioner has 45 days following service of Respondents' answer in which to file a reply.

DATED THIS 25th Day of August 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE